**Application of COMPUTER COMMUNI-CATIONS, INC.**
**Patent Appeal No. 8983.**

United States Court of Customs and Patent Appeals.
Aug. 9, 1973.

---

Edward A. Sokolski, Los Angeles, Cal., attorney of record, for appellant. Edwin E. Greigg, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE, Judges, and AL-MOND, Senior Judge.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board,[1] affirming the examiner's refusal to register appellant's composite mark depicted below, for "computer peripheral equipment, namely peripheral controllers, displays, keyboards, magnetic tape units, card readers, printers, multiplexers and computer channel adapters:"[2]

[A8233]

Refusal to register was based on likelihood of confusion involving the mark depicted below, which is registered for "control panel wiring accessories for electronic data processing machines,"[3] and for "recording film; data processing forms; recording charts; recording paper; all sensitized for use with data processing machines, computers, seismographs, electrocardiographs, polygraphs, and oscillographs; and pressure stylus markers for use with said instruments:"[4]

[A8234]

Appellant contends that there is no likelihood of confusion when it is considered that the differences in the design portion of appellant's mark (block "C" within a block "C") and the previously registered mark (round "C" within a block "G") are themselves sufficient to preclude such a likelihood; that the words "Computer Communications" form a significant part of appellant's trademark design and impression, especially since "Computer Communications" is also appellant's trade name; that appellant's goods are not closely related to those of the prior registrations; and that appellant's goods are sold to discriminating, technically-oriented purchasers.

The board found that "while the goods of applicant and the goods set forth in the cited registrations are not identical, they are closely related products which could be sold to the same class of purchasers through the same channels of trade." The board properly considered both marks in their entireties, and was of the view that the design portion of appellant's mark was its most visually prominent feature. While it accepted

---

1. Abstracted at 169 USPQ 256 (1971).

2. Application Serial No. 289,973, filed January 31, 1968.

3. Registration No. 712,829, registered March 21, 1961.

4. Registration No. 868,662, registered April 29, 1969.

appellant's contentions considering the discriminating purchasers, the board pointed out that "being skilled in one's art does not necessarily preclude mistaking one trademark for another when the marks are as similar as those before us, and cover merchandise in the same general field."

We agree with the reasoning and decision of the board. We do not think that the presence of appellant's "Computer Communications" sufficiently differentiates between the marks, considering appellant's prominent letter-design portion. Moreover, while the relationship between goods as well as between marks is almost always one of degree, we are not convinced that the respective goods under consideration are so diverse as to prevent a reasonable likelihood of confusion, mistake, or deception when two such similar marks are applied to them.

The decision of the board is affirmed.

Affirmed.

RICH, Judge (dissenting).

I respectfully dissent. I would reverse the refusal to register.

This is the ex parte rejection of an application to register a trademark based on two prior registrations of a mark to Graphic Controls Corporation of the logotype consisting of a small letter "C" within a larger letter "G", as depicted in the majority opinion. This logo or mark will unquestionably be associated, by those familiar with it, with the name of its owner, Graphic Controls. Neither the majority opinion nor the opinion of the board, of which it is a paraphrase, mentions this circumstance.

It is further emphasized that the "GC" logo is the entire reference, no words of any kind being associated therewith.

As the examiner made clear, rejection is based on section 2(d) of the Trademark Act (15 U.S.C. § 1052(d)) which provides that

No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office \* \* \* as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive \* \* \* .

The question, therefore, is, strictly, whether there is a likelihood that the hypothetical concurrent use of the two marks would be likely to cause confusion.

Appellant's mark is not just the logo C-within-a-C. If it were, I would readily concede that concurrent use with the reference mark on the goods of the respective parties would be likely to cause confusion as to source of the goods. However, as appellant has continuously emphasized—in vain—an integral part of its mark is the two words prominently running out from the center of the smaller "C": "Computer Communications." Both the board and the majority have decided this case just as though they did not exist. The board decided that the "CC" design is the "most prominent feature of applicant's mark" in view of which "there is substantial similarity" to the reference mark, which of course there is. But a finding of substantial similarity does not justify a legal conclusion of likelihood of confusion. *All* of the facts must be considered. The board also said that "Computer Communications" is "of little, if any, *trademark* significance" (my emphasis), giving no reasons. Presumably, it is supposed to have some descriptive connotation, though no one has ever explained why or if that is so or what im-

portance it has.[1] We are not concerned with the *trademark* significance of those words by themselves any more than we are concerned with the trademark significance of the big "C" or the little "C" by itself. The only thing we are concerned with is whether when the mark sought to be registered is used, including *each and every one of its elements combined in the way that they are*, it would be likely to cause confusion, mistake, or to deceive, assuming concurrent use of the Graphic Controls "GC" mark.

I am unable to conceive of how confusion, mistake, or deception as to the origin of the goods could result from a mark having as *a* prominent feature the words "Computer Communications," which happens to be appellant's trade name. To me that is more than enough to prevent confusion. It does not matter that the rest of the mark is also "prominent," or even more eye-catching than the words. In short, appellant is not trying to register the "CC" portion of the mark but only the unitary whole which, in my view, cannot be brought within the prohibition of section 2(d). The mark carries within itself its own immunization from that statutory provision. Computer Communications, Inc., is the source of these goods is what it says to the beholder, not some company whose initials may be "GC" or "CG".

The board, in my view, did not view the marks in their entireties, as the majority says. It found the "substantial similarity" in the "design feature" and disposed of the word portion of the mark (which is part of the design but apparently was not so regarded by the board) by saying it was without "trademark" significance, "connotatively or visually." I can see no justification for this latter holding. The words actually connote the source of the goods and they are visually prominent.

---

1. In his first action, the examiner required these words to be disclaimed and applicant obligingly did so in these words,

No registration rights are claimed for the words "COMPUTER COMMUNICATIONS" apart from the mark shown in the drawing, but applicant waives none of its common law rights therein. At most, such a disclaimer means no more than that the applicant is not claiming any *registration* rights in the disclaimed words per se—i. e., *apart* from the mark as a whole. It has no bearing on the question of likelihood of confusion arising from the unitary mark which includes the disclaimed words. The only reason the examiner gave for requiring the disclaimer was, "the same is not the subject of exclusive appropriation."